Dale M. VAN SANDT, Appellant,

v.

Simon BROWN, Appellee.

No. S–7619.

Supreme Court of Alaska.

Aug. 22, 1997.

Daniel Westerburg, Homer, for Appellant.

Venable Vermont, Jr. and William F. Morse, Assistant Attorneys General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

*OPINION*

FABE, Justice.

## I. *INTRODUCTION*

This appeal involves a civil rights action arising from the warrantless nighttime entry by three Alaska State Troopers into the home and bedroom of Dale Van Sandt. The troopers were searching for two escaped prisoners from the Spring Creek Correctional Center in Seward. The limited issue presented on appeal is whether the superior court correctly granted a directed verdict in favor of Sergeant Simon Brown on his qualified immunity defense. We reverse.

## II. *FACTS*

Dale Van Sandt worked as a prison guard at the Spring Creek Correctional Center (Spring Creek). He lived in a mobile home in Seward, approximately three and a half miles from the entrance to the prison. Late in the evening of March 15, 1994, two prisoners escaped from Spring Creek. Both were convicted murderers and considered extremely dangerous. The prison notified the Alaska State Trooper post headquarters in Soldotna of the escape.

Brown was the senior trooper on duty that night and the head of the tracking team assigned to prison escapes. As he was driving to Seward to assist in the search for the escaped prisoners, Brown heard a radio transmission reporting that a person with the physical characteristics of one of the escapees had been sighted at the Short Stop, a convenience store near Van Sandt's trailer park. According to the radio report, a member of the search party had also found footprints in the snow approximately 200–300 yards behind the store. Brown directed his team to search an area encompassing several neighborhoods near the Short Stop, including the trailer park in which Van Sandt resided.[1]

Officer Dale Eaton was an investigator with the Seward Police Department and part of the search team. Eaton and several other officers worked their way through the trailer park in which Van Sandt resided, alerting the residents and searching for clues. When Eaton arrived at Van Sandt's trailer, he pounded on the door with either his flashlight or his fist, and the door popped open about six inches.[2] Eaton then called into the trailer, but no one responded.

Eaton called the police dispatcher and described what had occurred at the Van Sandt trailer. Brown heard the description over the radio and arrived at the trailer shortly thereafter. The parties dispute whether Eaton told Brown that he had caused the door to open by pounding on it, or whether he

---

1. Van Sandt's trailer park has approximately fifteen homes in it. On the other side of the road from the Short Stop are two additional subdivisions. Approximately 65 to 100 homes can be found within a one-mile radius of the Short Stop.

2. Van Sandt testified that less than half an hour earlier, at approximately 3:00 a.m., he had gotten out of bed to use the bathroom, opened the door to check the weather, and closed the door firmly.

simply told Brown that he found the door open.[3] Receiving no response to additional shouts of "Alaska State Troopers," Brown made the decision to enter Van Sandt's trailer with two of his team members.

At the time Brown made the decision to enter, there were no broken windows or other signs of forced entry. There were no footprints leading to the Van Sandt trailer nor had any requests for assistance from the trailer or nearby residents been received. As Brown conceded at trial: "I had nothing specifically that said [the escapees were] in ... Van Sandt's residence." Brown based his decision on the open door, the report that someone resembling one of the escapees had been seen in the general vicinity about thirty minutes earlier, and his suspicion that the escapees might try to enter a residence in order to secure hostages, winter gear or keys to a vehicle.

Van Sandt was asleep when the troopers entered his trailer. He awoke to the word "freeze," spoken by an officer wearing camouflage and a ski mask. The officer was pointing a gun at Van Sandt and shining a flashlight in his face. Van Sandt testified that he believed that he would be killed. The officers identified themselves and told Van Sandt that they were looking for two escaped prisoners from Spring Creek. One of the officers searched the room and discovered Van Sandt's guard uniform in a closet. The officers then asked Van Sandt for identification. He responded that his identification tag was on his uniform shirt in the closet. After verifying Van Sandt's identity as a correctional officer, the officers left the trailer.

Van Sandt filed an action for damages against Brown, the other members of the search team, and the State. Among Van Sandt's various causes of action was a civil rights claim under 42 U.S.C. § 1983, alleging that Brown had violated Van Sandt's Fourth Amendment rights under color of state law. By the time of trial, only this claim remained. At the close of the testimony, Brown moved for a directed verdict, arguing that he was entitled to qualified immunity from Van Sandt's claim. The trial court granted the motion. Van Sandt appeals.

### III. *DISCUSSION*

█ Van Sandt claims that when the officers entered and searched his residence, they violated his Fourth Amendment rights, thus providing the basis for § 1983 liability. Brown asserted as a defense the doctrine of qualified immunity. The superior court initially found that whether Eaton informed Brown that he had caused the door to Van Sandt's trailer to open was a disputed fact that precluded summary judgment on the issue of qualified immunity. At the end of the plaintiff's case, Brown moved for a directed verdict on the issue. The trial court indicated that, in "an abundance of caution," it wanted to hear additional testimony before ruling on the motion. At the close of all of the testimony, Brown renewed the motion for a directed verdict. After argument by both parties, the trial court again found that whether Eaton informed Brown that he had caused the door to open was a disputed fact. However, the court changed its position on the significance of this fact, concluding that even if Brown knew that Eaton had opened the door to the Van Sandt trailer, Brown was entitled to qualified immunity.[4]

 We review the superior court's grant of a directed verdict "to determine whether the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable [persons] could not differ in their judgment." *Holiday Inns of*

---

3. Eaton initially stated that he told Brown "what he found and what he had done." Eaton later stated in an affidavit that he did not disclose to Eaton that he had caused the door to open. In a subsequent affidavit, he averred that he probably did tell Brown that the door came open when he knocked on it. At trial, Eaton testified that he could not remember what he told Brown, but agreed that he could think of no reason why he would not have told him what he had done.

4. We note that qualified immunity is an "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). Therefore, immunity questions ordinarily should be decided by the court long before trial. *Id.* at 529, 105 S.Ct. at 2817.

*Am., Inc. v. Peck,* 520 P.2d 87, 92 (Alaska 1974). Whether a given set of facts entitles the defendant to qualified immunity from a § 1983 claim is a question of law, *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 536–37, 116 L.Ed.2d 589 (1991), which we review *de novo. Elder v. Holloway,* 510 U.S. 510, 516, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994).

Under federal case law,[5] a law enforcement officer is entitled to qualified immunity when performing a search and seizure if, in light of clearly established law and the information available to the officer at the time, a reasonable officer could have believed the search to be lawful. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987). The law is "clearly established" if the contours of the right are sufficiently clear that a reasonable official would understand that his actions violate that right. *Id.* at 640, 107 S.Ct. at 3039. However, a court need not have previously held the very action in question unlawful for the rule to be "clearly established." *Id.*

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A warrantless, nonconsensual entry and search of a private residence is presumptively unreasonable in the absence of probable cause and exigent circumstances. *Welsh v. Wisconsin,* 466 U.S. 740, 748–49, 104 S.Ct. 2091, 2096–97, 80 L.Ed.2d 732 (1984); *accord Murdock v. Stout,* 54 F.3d 1437, 1441 (9th Cir.1995). This rule was "clearly established law" at the time Brown searched Van Sandt's trailer. Therefore, Brown is entitled to qualified immunity only if a reasonable officer could have believed that the entry and search of Van Sandt's trailer was supported by probable cause and that exigent circumstances prevented obtaining a warrant.

As the U.S. Supreme Court has stated, "[p]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). Thus, the U.S. Supreme Court has adopted an approach that looks to the totality of the circumstances known to the officers at the time they entered the residence. *Id.* at 231, 103 S.Ct. at 2328–29. Under this approach, "[p]robable cause requires only a fair probability or substantial chance of criminal activity, not an actual showing that such activity occurred." *Murdock v. Stout,* 54 F.3d at 1441 (citing *Gates,* 462 U.S. at 244, 103 S.Ct. at 2335).

The facts, viewed in the light most favorable to Van Sandt, indicate that when Brown decided to enter Van Sandt's trailer, he possessed the following information suggesting that the escaped felons might be in the trailer: (1) someone with characteristics similar to those of one of the escapees had been spotted at the Short Stop, which was in the vicinity of Van Sandt's trailer park, (2) footprints had been found behind the Short Stop, (3) there was no response from within Van Sandt's trailer to the officers' shouts, and (4) the door to Van Sandt's trailer popped open when Investigator Eaton pounded on it.

The federal courts require a stronger showing of probable cause than this to uphold a search under the "exigent circumstances" exception to the warrant requirement. For example, in *Murdock v. Stout,* the court found that officers had probable cause to enter a house when they had received reports of suspicious activity at the residence, the resident did not respond and there were indications that he was or should have been at home, and the door was open. 54 F.3d at 1441–42. However, the court stated that it doubted that a report of suspicious activity and an open door, in the absence of physical evidence of a burglary such as a broken window or forced lock, "would be

---

**5.** The elements of and defenses to a federal cause of action are defined by federal law. *Howlett v. Rose,* 496 U.S. 356, 375–76, 110 S.Ct. 2430,

2442–43, 110 L.Ed.2d 332 (1990). Thus, we look to federal law in determining the scope of Van

sufficient probable cause to support entry." [6] *Id.* at 1441. In *Creighton v. Anderson*, 922 F.2d 443 (8th Cir.1990), the court found probable cause to uphold a warrantless search of a house where the police had information "directly linking" the suspect with the house and with a car owned by the residents of the house, possessed evidence suggesting that the car had been used in the robbery under investigation, and had eliminated two other likely hiding places.

In this case, there were no broken windows or other signs of forced entry, nor were there footprints, reports from neighbors, or other evidence indicating that the fleeing convicts had approached or entered the trailer. Moreover, although Brown received no response to his shouts into the trailer, there were no indications that "a resident was or should have been at the residence." *Murdock*, 54 F.3d at 1442. Indeed, the only fact that differentiated Van Sandt's trailer from any other trailer in the area where the resident did not respond to the police was that Van Sandt's door popped open when Eaton knocked on it. As Brown conceded at trial, he "had nothing specifically that said [the escapees were] in ... Van Sandt's residence."

If the facts are viewed in the light most favorable to Van Sandt, we conclude that a reasonable officer could not have believed that probable cause existed to enter and search Van Sandt's home.[7] If Sgt. Brown was aware that the trailer door was opened by another officer, then he did not have sufficient information linking the escapees to the trailer to support a reasonable belief that the warrantless entry was lawful. Therefore, we hold that the superior court erred in granting Brown's motion for a directed verdict based on qualified immunity. Rather, the determination of whether Eaton told Brown that he had caused the door to open was a disputed material fact that should have been left to the jury.

Sandt's rights and Brown's qualified immunity with respect to Van Sandt's § 1983 claim.

6. In this case, Van Sandt conceded at oral argument that if the door to Van Sandt's trailer had been open when the officers arrived, Brown would have had probable cause to support entry into the residence.

7. Because of our conclusion, we need not reach the issue of exigent circumstances.

## IV. *CONCLUSION*

Therefore we REVERSE the superior court's grant of a directed verdict, and REMAND this case for a new trial.