David S. NOY, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8327.

Court of Appeals of Alaska.

Nov. 14, 2003.

William R. Satterberg, Jr., Fairbanks, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION ON REHEARING*

MANNHEIMER, Judge.

In *Ravin v. State*, 537 P.2d 494 (Alaska 1975), the Alaska Supreme Court held that the privacy clause of the Alaska Constitution (Article I, Section 22) protects the possession of marijuana in one's home for personal use. In 1990, the voters of Alaska enacted AS

11.71.060(a), which purports to criminalize the possession of any amount of marijuana, even when the marijuana is possessed in one's home for personal use. In our initial opinion in this case—*Noy v. State,* Alaska App. 83 P.3d 538, 2003 WL 23207968 (2003)[1] —we held that this statute is unconstitutional because it conflicts with the right of privacy recognized in the *Ravin* decision. However, we concluded that the statute could be preserved to the extent that it prohibits possession of four ounces or more of marijuana.

The State now seeks rehearing. In its petition for rehearing, the State argues that this Court's initial opinion is flawed in some half-dozen ways, but most of the State's arguments ultimately rest on one underlying assertion: that we misunderstood the nature of the Alaska Supreme Court's decision in *Ravin.*

■ In our initial decision in this case, we read the *Ravin* opinion to say that the privacy clause of the Alaska Constitution restricts the legislature's (and the voters') authority to enact laws prohibiting the possession of marijuana in one's home for personal use. The State contends that this view of *Ravin* is fundamentally flawed—that *Ravin* did not announce a constitutional restriction on the government's law-making power.

According to the State, *Ravin* did not hold that Article I, Section 22 of the Alaska Constitution restricts the government's authority to *enact* statutes that prohibit possession of marijuana in one's home for personal use. Rather, *Ravin* restricted the government's authority to *enforce* such statutes—by creating an affirmative defense that individual defendants can raise if they are prosecuted for violating such a statute.

The State argues that this defense is similar to a claim of entrapment or selective prosecution, in that it does not rest on a claim that the defendant is innocent of wrongdoing, but rather on a claim that the government violated constitutional guarantees when it singled out this particular defendant as the target of prosecution. According to the State, *Ravin* stands for the proposition that, in any prosecution for possession of marijuana in one's home, the defendant can assert that the possession was of a small amount for personal use. If the defendant raises such a claim, the matter is decided (before trial) by a judge, not a jury. To defeat the proposed defense, the State would have to prove either (1) that the marijuana was not for personal use, or (2) that the government had a sufficient interest in prohibiting the possession of that particular amount of marijuana under the specific circumstances of that defendant's case.

In other words, the State argues that *Ravin* created a system in which the constitutionality of marijuana prosecutions would be decided by trial judges on a case-by-case basis—and that, in these case-specific hearings, the State would repeatedly try to convince numerous different judges that there is a sufficient government interest to justify imposing criminal penalties on people who possess varying amounts of marijuana.

The State's proposed interpretation of the *Ravin* decision would seemingly put us on the road to legal chaos. Under the State's proposal, dozens of judges across the state would be required to issue potentially inconsistent rulings as to whether, under the facts of a particular defendant's case, the State had sufficient justification to criminalize the defendant's possession of 3.0 ounces, or 2.2 ounces, or 1.4 ounces, or 0.6 ounces of marijuana.

However, our primary reason for rejecting the State's interpretation of *Ravin* is that the State's interpretation is inconsistent with *Ravin* itself.

The *Ravin* decision does not speak of an affirmative defense of the type proposed by the State in its petition for rehearing, nor does the *Ravin* opinion describe itself as establishing case-specific limits on the State's enforcement of marijuana statutes. Rather, in the opening sentence of *Ravin,* the Alaska Supreme Court described the issue before them as "[t]he constitutionality of Alaska's statute prohibiting possession of marijuana".[2]

1. 83 P.3d 538.

2. *Ravin,* 537 P.2d at 496.

Later in the opinion, after the supreme court held that Article I, Section 22 of our state constitution guarantees a right of privacy in one's home[3], the court declared that two major questions remained:

whether the State has demonstrated sufficient justification for the prohibition of possession of marijuana in general ... and ... whether the State has met the greater burden of showing a close and substantial relationship between the public welfare and control of ingestion or possession of marijuana in the home for personal use.

*Ravin,* 537 P.2d at 504.

The supreme court then proceeded to analyze the scientific data concerning the uses and effects of marijuana. The court did not attempt to analyze the particular facts of Irwin Ravin's case; rather, the court assessed the legislature's overall justification for regulating *any* person's possession of marijuana in their home.[4]

And when the *Ravin* court announced its conclusion, the court did not frame that conclusion in terms of whether the State had an interest in prohibiting the possession of marijuana under the particular facts of the case before it. Instead, the court framed its conclusion as a general restriction on the government's authority to legislatively control this aspect of people's personal behavior:

[W]e conclude that [the state has shown] no adequate justification for the state's intrusion into the citizen's right to privacy by its prohibition of possession of marijuana by an adult for personal consumption in the home[.] The privacy of the individual's home cannot be breached absent a persuasive showing of a close and substantial relationship of the intrusion to a legitimate governmental interest. Here, mere scientific doubts will not suffice. The state must demonstrate a need based on proof that the public health or welfare will in fact suffer if the controls are not applied.

The state has a legitimate concern with avoiding the spread of marijuana use to adolescents who may not be equipped with the maturity to handle the experience prudently, as well as a legitimate concern with the problem of driving under the influence of marijuana. Yet these interests are insufficient to justify intrusions into the rights of adults in the privacy of their own homes.

*Ravin,* 537 P.2d at 511.

In the years since *Ravin* was decided, there has been no suggestion (until now) that *Ravin* was something other than normal constitutional litigation in which the supreme court adjudicated the constitutionality of a particular category of criminal statute. For example, six months after *Ravin,* in *Belgarde v. State,* the supreme court referred to *Ravin* as "[a] case [in which] we held that the state may not prohibit possession of [marijuana] by an adult in [their] home for personal consumption".[5] In 1978, in *State v. Erickson,* the supreme court again declared that *Ravin* represented a restriction on the state's power to legislate:

In *Ravin v. State,* this court held that the state could not bar the personal use and possession of marijuana in the home. In view of the relative harmlessness of the drug, the individual's right to privacy under the Alaska Constitution was found to outweigh the state interest in regulation.

574 P.2d 1, 21 (Alaska 1978) (footnote omitted). And more recently, in *Luedtke v. Nabors Alaska Drilling, Inc.,* the supreme court declared that "*Ravin* addressed the issue of whether the state could prohibit the use of marijuana in the home. We held that it could not."[6]

Based on this analysis of the *Ravin* decision and the later supreme court decisions construing *Ravin,* we are convinced that the State's interpretation of *Ravin* is wrong. *Ravin* did not create an affirmative defense that defendants might raise, on a case-by-case basis, when they were prosecuted for possessing marijuana in their home for personal use. Instead, both in the *Ravin* opinion itself and in the supreme court's later descriptions of *Ravin,* the Alaska Supreme

---

**3.** *Id.* at 504.

**4.** *See id.,* 537 P.2d at 504–511.

**5.** 543 P.2d 206, 207 (Alaska 1975).

**6.** 768 P.2d 1123, 1135 (Alaska 1989).

Court has repeatedly and consistently characterized the *Ravin* decision as announcing a constitutional limitation on the government's authority to enact legislation prohibiting the possession of marijuana in the privacy of one's home.

Accordingly, we reject the State's suggestion that *Ravin* left Alaska's marijuana statutes intact but created an affirmative defense to be litigated in each individual case.

Although this is not a factor in our interpretation of *Ravin*, we note that the Alaska Legislature took this same view of *Ravin* when they refashioned this state's drug laws twenty years ago. As we described in *Walker v. State*[7], the legislature responded to *Ravin* in 1982 by enacting a statute—former AS 11.71.060(a)(4)—that prohibited possession of four ounces or more of marijuana, even if the marijuana was possessed in one's home for personal use. In the commentary that accompanied this statute, the legislature declared:

> [T]his legislation is intended to clarify the law in Alaska concerning possession of marijuana, in light of the decision of the Supreme Court of Alaska in *Ravin v. State*, 537 P.2d 494 (Alaska 1975). *Ravin* held that Alaska's constitutional right to privacy protects the possession and use of marijuana by an adult, in the home, in amounts indicative of personal use in a purely personal, non-commercial context. The approach taken in this Act is to define, for purposes of the decision in *Ravin*, an amount which is indicative of personal use, and to provide a clear line of demarcation of four ounces, so that citizens of this state will know precisely what conduct is prohibited.

Commentary and Sectional Analysis for the 1982 Revision of Alaska's Controlled Substances Laws (CCSB 190), p. 19 (quoted in *Walker v. State*, 991 P.2d at 802–03).

Thus, not only is the State's suggested interpretation of *Ravin* at odds with the supreme court's statements on this question, but it is also at odds with the Alaska Legislature's announced policy aims in this area of the law: the aim of "defin[ing], for purposes

of ... *Ravin*, [a specific] amount which is indicative of personal use", and the aim of "provid[ing] a clear line of demarcation ...", so that citizens of this state will know precisely what conduct is prohibited".

We now address certain other aspects of the State's petition for rehearing.

■ In our original decision in this case, we stated that because the jury acquitted Noy of the charge of possessing eight ounces or more of marijuana, the State is barred from asserting, in any future litigation, that Noy did indeed possess eight ounces or more of marijuana. The State argues that this conclusion is mistaken for two reasons.

First, the State contends that the doctrine of collateral estoppel does not apply when the aggrieved party had no method of seeking appellate review of the adverse judgement. The State points out that the double jeopardy clauses of the federal and state constitutions preclude the State from seeking appellate review of a jury's verdict of acquittal. Thus, the State argues, the fact that Noy's jury acquitted him of possessing eight ounces or more of marijuana should not estop the State from continuing to assert that Noy possessed more marijuana than the jury found.

The problem with the State's argument is that it is directly contrary to the United States Supreme Court's holding in *Ashe v. Swenson*, 397 U.S. 436, 445–46, 90 S.Ct. 1189, 1195–96, 25 L.Ed.2d 469 (1970).

Second, the State argues that the jury's acquittal should not be considered conclusive because the jury was misinstructed on how to calculate the weight of marijuana. The State asserts that, given the evidence presented at Noy's trial, it is obvious that Noy possessed at least eight ounces of marijuana, and therefore the jury's verdict of acquittal must have been the fruit of the flawed jury instruction.

But as we explained in our initial opinion, the State did not introduce the marijuana itself; instead, the State relied on photographs and testimony concerning the marijuana. The photographs showed that the marijuana contained stalks, not just leaves

7. 991 P.2d 799 (Alaska App.1999).

and buds. Even if the jury had been correctly instructed, they would have been told that stalks are not to be considered when assessing the weight of harvested marijuana. Although there may be a substantial possibility that the erroneous weight-calculation instruction influenced the jury's thinking when they assessed the weight of the marijuana, it is also possible that the jurors were not convinced beyond a reasonable doubt that the harvested marijuana, minus the stalks, weighed eight ounces or more. Thus, we must apply the collateral estoppel rule of *Ashe v. Swenson.* See our discussion of a related point in *State v. McDonald,* 872 P.2d 627, 660 (Alaska App.1994).

Moreover, even if we assume that the erroneous jury instruction played an instrumental role in the jury's decision to acquit Noy of possessing eight or more ounces of marijuana, the State would still be bound by the jury's verdict. The law on this point is summarized in Wayne R. LaFave, Jerold H. Israel, and Nancy J. King, *Criminal Procedure* (2nd ed.1999):

> If the jury reaches a verdict of acquittal or the judge grants a judgment of acquittal, double jeopardy bars a new trial even if it appears that the acquittal was based on an erroneous interpretation of the law.

*Id.,* § 25.1(g), Vol. 5, p. 648. *See also id.,* § 25.3(b), Vol. 5, pp. 666–68.

This view of the double jeopardy clause is borne out in the case law. *See United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977); *Livingston v. Murdaugh,* 183 F.3d 300, 301–02 (4th Cir.1999).

■ Finally, the State argues for the first time that if we adjudicate the constitutionality of AS 11.71.060(a) in Noy's case, our decision will unfairly preclude the State from attempting to prove that *Ravin* should be overruled or limited—*i.e.,* preclude the State from attempting to prove that there is sufficient justification for a criminal statute prohibiting any and all possession of marijuana, even possession of marijuana by adults in their home for personal use.

But our decision in this case merely implements the supreme court's constitutional rul-ing in *Ravin.* The State remains free in the future to challenge the continuing vitality of *Ravin.*

For all of these reasons, the State's petition for rehearing is DENIED.