**STATE of Alaska, Petitioner,**

v.

**Leo Richardson CROCKER
Jr., Respondent.**

**No. A–8462.**

Court of Appeals of Alaska.

Aug. 27, 2004.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Petitioner.

Andrew Haas, Haas & Spigelmyer, Homer, for the Respondent.

Before: COATS, Chief Judge, and
MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Leo Richardson Crocker Jr. was charged with fourth-degree controlled substance misconduct after the police executed a search warrant at his home and found marijuana plants, harvested marijuana, and marijuana-growing equipment. The superior court later concluded that the search warrant for Crocker's home should not have been issued. The superior court therefore suppressed all of this evidence and dismissed the charges against Crocker. The State now appeals the superior court's decision.

Our main task in this appeal is to clarify what the State must prove in order to obtain a warrant to enter and search a person's home for evidence of marijuana possession. The issue arises because not all marijuana possession is illegal. In *Ravin v. State*,[1] the Alaska Supreme Court held that the privacy provision of our state constitution (Article I, Section 22) protects an adult's right to possess a limited amount of marijuana in their home for personal use. And recently, in *Noy v. State*,[2] we held (based on *Ravin*) that Alaska's marijuana statutes must be construed to allow possession by adults of any amount less than four ounces of marijuana in the home for personal use.[3]

For the reasons explained in this opinion, we hold that a judicial officer should not issue a warrant to search a person's home for evidence of marijuana possession unless the State's warrant application establishes probable cause to believe that the person's possession of marijuana exceeds the scope of the possession that is constitutionally protected under *Ravin*. And, because the State's war-

---

1. 537 P.2d 494 (Alaska 1975).

2. 83 P.3d 538 (Alaska App.2003), *on rehearing*, 83 P.3d 545 (Alaska App.2003).

3. *Noy*, 83 P.3d at 542–43, *on rehearing*, 83 P.3d at 546–48.

rant application in Crocker's case fails to meet this test, we conclude that the superior court properly suppressed the evidence against Crocker.

> *A search warrant application must establish probable cause to believe that the property being sought is connected to the commission of a crime.*

Under AS 12.35.020, a judicial officer is empowered to issue a warrant authorizing the police to enter a premises and search for specified property if the government's warrant application establishes probable cause to believe:

> that the property was stolen or embezzled, or

> that the property was used as a means of committing a crime, or

> that the property is the intended means of committing a crime, and the property either is in the possession of a person who intends to commit the crime or is in the possession of someone else to whom it has been delivered for the purpose of concealing it or otherwise preventing its discovery, or

> that the property constitutes evidence of a particular crime or tends to show that a certain person has committed a particular crime.

In every case, the government must establish probable cause to believe that the property being sought is connected in one of these ways to the commission (or intended commission) of a crime.

> *Not all possession of marijuana is a crime. Thus, when the government seeks a warrant authorizing the search of a home for marijuana or related paraphernalia, the government's warrant application must establish probable cause to believe that the marijuana possessed in that home falls outside the type of possession protected under Ravin.*

■ Not all marijuana possession is a crime in Alaska. Under *Ravin* and *Noy*, an adult may possess any amount of marijuana less than four ounces in their home, if their possession is for personal use. Thus, it would seem that a court should not issue a search warrant based on an allegation of marijuana possession unless the State establishes probable cause to believe that the type of marijuana possession at issue in the case is something other than the type of possession protected under *Ravin*. (For instance, a court might properly issue a search warrant if the State establishes probable cause to believe that the marijuana is possessed for commercial purposes, or that the amount of marijuana is four ounces or more.)

■ But the State disputes this conclusion. In its brief to this Court, the State argues that *Ravin* does not actually forbid the legislature from criminalizing the possession of marijuana. Rather (the State argues), *Ravin* established an affirmative defense—the defense of personal use—that can be raised by people who are charged with marijuana possession. Based on this interpretation of *Ravin*, the State argues that all possession of marijuana continues to be crime in Alaska—and, thus, a judicial officer can lawfully issue a search warrant for evidence of marijuana possession so long as the State establishes probable cause to believe that the premises to be searched contains *any* marijuana (or any other property tending to show possession of marijuana).

We addressed and rejected this same argument in our opinion on rehearing in *Noy*:

> *Ravin* did not create an affirmative defense that defendants might raise, on a case-by-case basis, when they were prosecuted for possessing marijuana in their home for personal use.... [T]he Alaska Supreme Court has repeatedly and consistently characterized the *Ravin* decision as announcing a constitutional limitation on the government's authority to enact legislation prohibiting the possession of marijuana in the privacy of one's home.

> Accordingly, we reject the State's suggestion that *Ravin* left Alaska's marijuana statutes intact but created an affirmative defense to be litigated in each individual case.

*Noy (opinion on rehearing)*, 83 P.3d at 547–48.

The State further argues that if search warrant applications must establish probable cause to believe that the marijuana posses-

sion at issue in that case falls outside of the marijuana possession protected by *Ravin*, this would be tantamount to "a presumption that all marijuana possessed in a home is for purely personal use". But this "presumption" of non-criminality is built into the search and seizure clause of the Alaska Constitution and the statutory law governing the issuance of search warrants.

■ Before a search warrant can lawfully issue, the government must establish probable cause to believe that the evidence being sought is connected to a crime. This same rule governs search warrants for all controlled substances, not just marijuana.

Every day, people obtain controlled substances legally through a doctor's prescription. For instance, several prescription painkillers contain codeine, which is a Schedule IA controlled substance.[4] Our state constitution protects people from government intrusion into their homes unless the government affirmatively establishes a valid reason for the intrusion. Thus, even though the police may have firm information that a person currently possesses codeine in their home, a judicial officer should not issue a warrant that authorizes the police to enter the person's home and search the person's cupboards and drawers for evidence of this codeine possession unless the police also present the magistrate with some affirmative reason to believe that the codeine was obtained illegally or that (having been obtained lawfully) it is being distributed illegally.

■ The same rule applies to marijuana possession. Under the supreme court's decision in *Ravin* and our recent decision in *Noy*, not all possession of marijuana is illegal. Rather, Alaskans have a right to possess a limited amount of marijuana for personal use in their homes. We accordingly hold that no search warrant can issue for evidence of marijuana possession unless the State affirmatively establishes probable cause to believe that the type of marijuana possession at issue in that case is something other than the type of possession protected under *Ravin*.

As the State correctly points out, the question is one of probable cause, not ultimate proof. Thus, the search warrant application need not negate every other reasonable, exculpatory explanation of the observed facts.[5] But the search warrant application can not rely solely on the fact that someone is in possession of marijuana. The warrant application must provide an affirmative reason to conclude that the possession is illegal or that the marijuana otherwise constitutes evidence of a crime.

In his dissent, Judge Coats asserts that this holding is a departure from precedent. He points out that, in several prior decisions, this Court has accepted the premise that the smell of growing marijuana could establish probable cause for a search of a home. But those cases were decided in the context of state law that forbade any and all possession of marijuana (and the parties did not attack that law under *Ravin*). Thus, in those prior instances, the smell of growing marijuana emanating from a house was persuasive evidence that someone was breaking the law. That is no longer the case.

Judge Coats also seconds the State's argument that, if we require the police to present the magistrate with some reason to believe that a homeowner's possession of marijuana is illegal, we are creating the unwarranted "presumption" that all possession of marijuana is legal. This is a misunderstanding of our decision.

Our holding does not rest on a presumption, one way or the other, about whether a particular instance of possession of marijuana in the home is legal. Rather, our holding rests on the constitutional principle that no search warrant can issue until the police present a magistrate with good reason to believe that the law has been broken (and that evidence of that illegality can be found on the premises to be searched).

Evidence that a person possesses an unspecified quantity of marijuana in their home does not, standing alone, establish probable cause to believe that the person is breaking

---

4. AS 11.71.140(b)(1)(G).

5. *See McCoy v. State*, 491 P.2d 127, 130 (Alaska 1971); *State v. Grier*, 791 P.2d 627, 632 n. 3 (Alaska App.1990).

the law. Thus, without some additional indication of illegality (for instance, evidence suggesting that the marijuana is being sold, or that the amount of marijuana equals or exceeds the statutory ceiling of four ounces), the search and seizure provision of our state constitution (Article I, Section 14) prohibits the issuance of a search warrant.

Under the law advocated by the State and by Judge Coats in his dissent (that is, if possession of any amount of marijuana in one's home constituted adequate grounds for the issuance of a search warrant), Alaska citizens would have the constitutional right to possess marijuana for personal use in their homes, but they would exercise this right at their peril—because their possession of marijuana would subject them to thorough-going police searches of their homes. If this were the law, the Alaska Constitution's protection of the right of privacy in one's home—the cornerstone of the *Ravin* decision—would be eviscerated.

We therefore reiterate that no search warrant can issue for evidence of marijuana possession unless the State affirmatively establishes probable cause to believe that the type of marijuana possession at issue in that case is something other than the type of possession protected under *Ravin*.

*The State's search warrant application in Crocker's case failed to establish probable cause to believe that his possession of marijuana fell outside the realm of marijuana possession that is protected under Ravin.*

■ The search warrant application in Crocker's case begins with seven pages of "boilerplate"—dozens of paragraphs containing general descriptions of how marijuana is normally grown and processed. The warrant application then contains one page of factual assertions specific to Crocker's case.

According to these case-specific assertions, the state troopers received a tip from an unidentified "confidential source" that marijuana cultivation was being conducted in the Anchor Point residence of Debra Steik. Based on this tip, two officers visited the Steik residence "to conduct an investigative contact". The two officers smelled "a strong odor of growing marijuana" when they stood at Steik's front door. Thus, there was ample probable cause to believe that marijuana was being grown inside the residence. The question, however, is whether there was probable cause to believe that this marijuana was being grown for commercial purposes or that the amount of marijuana inside the house exceeded the amount protected under the *Ravin* and *Noy* decisions.

The State asserts that the strength of the smell (including the fact that the officers could detect the odor while standing outside the house) tends to show that the amount of marijuana inside the house must have exceeded the amount protected by *Ravin* and *Noy*. But the search warrant application contains no assertion that the strength of the smell gave the officers any indication of the amount of marijuana that might be growing in the house.

Moreover, we can not simply assume that there is a direct proportionality between the strength of the odor and the amount of marijuana giving rise to that odor. We addressed a similar issue in *Ballard v. State*, 955 P.2d 931 (Alaska App.1998), where we concluded that nystagmus (an involuntary "jerking" of a person's eyeball as they attempt to follow the path of a moving object) is a reliable indicator of alcohol consumption, but that there is no direct correlation between the *degree* of a person's nystagmus and the amount of their alcohol consumption or intoxication. *Id.* at 933, 939–940, 942.

There may or may not be a correlation between the strength of the odor of growing marijuana and the amount of marijuana being grown. But the search warrant application in the present case makes no assertion concerning such a potential correlation, and we will not assume such a correlation in the absence of evidence.

Moreover, even if such a correlation exists, the officer in this case merely asserted that the odor was "strong". There was nothing to indicate whether an odor of this unexplained degree of strength provided a reasonable basis for concluding that the amount of marijuana in the house exceeded the amount protected under *Ravin* and *Noy*.

■ The State also argues that the amount of electricity usage at the Steik residence provided probable cause to believe that the amount of marijuana inside the house exceeded the amount of marijuana protected under *Ravin* and *Noy*.

After receiving the tip from their "confidential source" that marijuana was being grown at the Steik residence, the police—employing unspecified means—conducted a "check" of the utility usage at the residence. They discovered that, over the preceding thirteen months, the average electricity usage at Steik's home was 56.6 kilowatt hours per day. The officer who applied for the search warrant asserted that, "[b]ased on [his] training and experience, the [electricity] consumption at [Steik's] residence [was] higher than average for a home of [its] size."

One of the boilerplate paragraphs of the search warrant application contains an assertion that, according to the Homer Electric Association, "prospective customers should expect an average monthly [electricity] consumption of approximately 22 [kilowatt-hours] per day with natural gas heating, and 27 to 31 [kilowatt-hours] per day with electric heat." However, the search warrant application does not describe Steik's house (other than identifying its address). The magistrate had no way of knowing whether Steik's house was of average size or was smaller or larger than average. Thus, the magistrate had no way of knowing whether one would reasonably expect Steik's electricity usage to fall within, below, or above the average range for all of the Homer Electric Association's customers.

Indeed, when the officer who applied for the search warrant made his assertion about the "higher than average" electricity usage at Steik's residence, he did not rely on the estimate given by the Homer Electric Association. Rather, the officer relied on his "training and experience". But the officer did not explain what training or experience he might have received that would allow him to offer an informed opinion concerning the typical or average electricity usage for homes of various sizes.

And although the officer asserted that the electricity usage at Steik's home was "higher than average" for a house its size, the officer did not say how much higher than average this usage was. When an "average" amount of electricity usage has been identified for a particular type or size of house, this means that many (conceivably, up to half) of those houses will have electricity usage that is *higher* than average. Thus, even if we credit the officer's assertion that the Steik residence was using more electricity than average for a house its size, this unelaborated assertion did not significantly bolster the assertion that Steik's house was the site of marijuana cultivation. Much less did this "higher than average" electricity usage establish probable cause to believe that the amount of marijuana being cultivated in the house exceeded the amount protected under *Ravin* and *Noy*.

For these reasons, we conclude that even though the search warrant application established probable cause to believe that marijuana cultivation was being conducted inside the residence, the warrant application failed to establish probable cause to believe that this marijuana cultivation was for commercial purposes or that the amount of marijuana being cultivated exceeded the amount protected under *Ravin* and *Noy*. Accordingly, the search warrant should not have been issued, and the superior court correctly suppressed the evidence obtained under the authority of that warrant.

*Conclusion*

The decision of the superior court is AFFIRMED.

COATS, C.J., dissents.

COATS, Chief Judge, dissenting.

In reviewing whether a magistrate properly issued a search warrant, this court is to give the magistrate's findings great deference. This court "view[s] the evidence in the light most favorable to upholding the warrant and will only invalidate the warrant if the magistrate abused her discretion."[1] We are

1. *Van Buren v. State*, 823 P.2d 1258, 1261 (Alaska App.1992) (citing *State v. Chapman*, 783 P.2d 771, 772 (Alaska App.1989)).

to uphold the decision to issue the search warrant in doubtful or marginal cases.[2] When I apply this standard, I conclude that the information contained in the warrant established a fair probability that Crocker possessed an unlawful amount of marijuana. I would therefore uphold the warrant.

In several prior decisions, this court has upheld search warrants that were based primarily on testimony from police officers that they smelled the strong odor of growing marijuana coming from a particular source.[3] In its decision today, the court overrules all these prior cases and adds a further requirement for the State to obtain a warrant: the State must prove that the growing marijuana was not a small quantity being grown for personal use, protected by *Ravin v. State*.[4] I would adhere to our precedent.

Our former cases, going back many years, accepted the conclusion that where the police could establish that there was a strong odor of growing marijuana, there was probable cause that there was criminal activity and

that a search warrant could properly be issued. Without any notice to the State, the court has suddenly reversed ground. The court now assumes that a marijuana growing operation is protected by *Ravin* and that the State has the duty to disprove this presumption before obtaining a search warrant. I do not see any basis for the majority's presumption,[5] and therefore, I would follow our former precedent.[6]

The majority states that our prior cases are questionable authority because they were decided "in the context of a state law that forbade any and all possession of marijuana." But *Ravin* has been the law in Alaska since 1975. So in our prior cases the parties and the court had to be aware of *Ravin*. Furthermore, the state statute which was based on the initiative that "forbade any and all possession of marijuana" was in effect at the time the warrant was issued in this case. *Noy v. State*, striking down that law, was decided long after the magistrate issued the search warrant in Crocker's case.[7]

2. *McClelland v. State*, 928 P.2d 1224, 1225 (Alaska App.1996); *State v. Conway*, 711 P.2d 555, 557 (Alaska App.1985).

3. *See, e.g., Lustig v. State*, 36 P.3d 731, 732–33 (Alaska App.2001); *Wallace v. State*, 933 P.2d 1157, 1163 (Alaska App.1997); *McClelland*, 928 P.2d at 1226–27; *Landers v. State*, 809 P.2d 424, 424–25, 426–27 (Alaska App.1991).

4. 537 P.2d 494 (Alaska 1975).

5. *See Illinois v. Gates*, 462 U.S. 213, 245 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983) (stating that "innocent behavior frequently will provide the basis for a showing of probable cause"); *Van Sandt v. Brown*, 944 P.2d 449, 452 (Alaska 1997) (quoting *Murdock v. Stout*, 54 F.3d 1437, 1441 (9th Cir.1995)) (stating that probable cause "requires only a fair probability or substantial chance of criminal activity, not an actual showing that such activity occurred"); *McCoy v. State*, 491 P.2d 127, 130 (Alaska 1971) (holding that probable cause existed despite possible innocent explanation for conduct); *Badoino v. State*, 785 P.2d 39, 41 (Alaska App.1990) (quoting *Harrelson v. State*, 516 P.2d 390, 396 (Alaska 1973)) ("Probable cause to issue a search warrant exists when 'reliable information is set forth in sufficient detail to warrant a reasonably prudent [person] in believing that a crime has been or was being committed.' "); *State v. Grier*, 791 P.2d 627, 632 n. 3 (Alaska App.1990) ("[P]robable cause is established even though the facts known to the officer could also be reconciled

with innocence."); *Dunn v. State*, 653 P.2d 1071, 1079 (Alaska App.1982) (holding that probable cause existed even though "various factors, if taken individually, are as readily consistent with innocence as guilt, ... the main point to be made is that the factors did not occur individually, and in isolation from each other"); *People v. Atley*, 727 P.2d 376, 377–78 (Colo.1986) (holding that the state established probable cause when the suspect's apartment did not appear to be lived in and the apartment contained a mushroom growing operation even though the informant's observations were as consistent with growing lawful mushroom plants, as they were with growing psychedelic mushrooms containing psilocybin, a controlled substance).

6. *See Planned Parenthood of Southeastern Penn. v. Casey*, 505 U.S. 833, 854, 112 S.Ct. 2791, 2808, 120 L.Ed.2d 674 (1992) (explaining that courts have a duty and obligation to follow precedent); *State v. Coon*, 974 P.2d 386, 394 (Alaska 1999) (quoting *State v. Fremgen*, 914 P.2d 1244, 1245 (Alaska 1996)) (stating that courts should reverse prior decisions only when they are "clearly convinced that the rule was originally erroneous or is no longer sound because of changed conditions, and that more harm than good would result from a departure from precedent").

7. *Noy v. State*, 83 P.3d 538 (Alaska App.2003) was issued in 2003, while the warrant in this case was issued in 2001.

I certainly believe, as does the majority, that it is this court's duty to follow the supreme court's decision in *Ravin*. My concern, however, is that the majority's decision actually threatens the viability of *Ravin* by departing from our former precedent and operating on the assumption that a marijuana growing operation is legal unless the State shows otherwise. The majority's decision makes it difficult for the State to enforce legitimate laws prohibiting the possession and sale of marijuana.