**STATE of Alaska, Appellant,**

v.

**Nick L. SMITH, Appellee.**

**No. A–9733.**

Court of Appeals of Alaska.

May 2, 2008.

Blair M. Christensen, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellant.

Peter F. Mysing, Kenai, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

The superior court granted Nick L. Smith's motion to suppress evidence and dismiss his indictment. Smith's motion contended that the search warrant that led to his indictment was issued without probable cause. We conclude that the affidavit supporting the search warrant application, on its face, provided probable cause for issuing the search warrant. Accordingly, we reverse the superior court's order suppressing the evidence and dismissing the indictment. However, we conclude that Smith has raised a potential attack on the validity of the search warrant that was not raised during the litigation of Smith's motion. Smith can pursue that line of attack when the case returns to the superior court for further proceedings on the indictment.

### Background facts and proceedings

On December 1, 2005, Investigator Kyle Young of the Alaska Bureau of Alcohol and Drug Enforcement applied for a search warrant to search Smith's mobile home at Canova Court in Nikiski for a possible marijuana grow operation. In support of his application, Young provided a thirteen-page affidavit.

The affidavit supplied the following information. Young drove by Smith's mobile home at Canova Court in Nikiski on November 28 and 29, 2005, and he noticed that there was a great deal of snow on the three vehicles parked at the residence. On December 1, 2005, Young and another trooper went to the mobile home. As the two investigators approached the mobile home, they smelled a "moderate odor" of growing marijuana coming from inside.

The investigators knocked, but no one answered. Young noticed that the front door of the mobile home was padlocked. There was only one set of tire tracks in the driveway and one set of footprints that led from the driveway to the door. There were no footprints in the snow around the mobile home, vehicles, or outbuildings. The windows that could be viewed from the front porch and driveway were "covered up."

Later that day, Young contacted a neighbor, Bill Erdahl, who identified Smith as the owner of the property. Erdahl told Young that he believed that Smith was in Mexico. He also said that, on most nights, someone would stop in at Smith's residence and then leave again.

Young searched Erdahl's residence with his consent to eliminate it as a possible source of the marijuana odor. Young also noted that the only other residence nearby was unoccupied; the driveway had not been cleared of snow and there were no footprints going to or from the residence.

Young summarized his observations of Smith's property and noted that

[b]ased upon [his] observations of the lack of activity, no footprints in the snow around the structure, vehicles or outbuildings, no vehicles recently parked overnight at the residence, the padlock on the front door and the information provided by the neighbor, [he] believe[d] that the residence [was] not currently occupied and [was] perhaps not being used as a dwelling, but only for the purpose of cultivating marijuana.

Young indicated that a records check showed that Smith had no drug convictions and did not have a medical marijuana certificate.

Young described his qualifications and training in drug investigations, the characteristics of a typical commercial marijuana grow, and his personal experience with grows. He also included statistical information. The information included what Young described as his unit's success rate and his personal success rate in smelling commercial amounts of growing marijuana. Young noted that, based on his experience in smelling felony level marijuana grow operations, he believed that there was sufficient marijuana growing at Smith's mobile home to support a felony charge.

Magistrate Jerry D. Anderson approved Young's application for a search warrant. When the police executed the search warrant at Smith's mobile home, they seized ninety-four marijuana plants that, when processed, amounted to 9.22 pounds of marijuana. They

also seized growing equipment and one-sixth of a pound of processed marijuana.

On March 3, 2006, the grand jury indicted Smith on four counts of fourth-degree misconduct involving a controlled substance.[1] Smith moved to suppress evidence and dismiss the indictment on the basis that the search warrant was issued without probable cause. Relying on *State v. Crocker*,[2] Smith argued that there was no probable cause supporting the search warrant because Young had "observed no specific facts that would justify a conclusion that the smell of marijuana that [he] perceiv[ed] was in excess of the constitutionally protected amount." Smith argued that Young's assertions in the affidavit were reduced to his observation of a "moderate smell" of cultivating marijuana coming from a residence whose owner was on vacation in Mexico.

Smith contended that Young's factual allegations were less supportive of a finding of probable cause than the evidence provided to the magistrate in *Crocker* because in that case, the police smelled a "strong" odor of marijuana and found that Crocker's electricity usage was higher than normal. Smith pointed out that, in his case, the police made no effort to check the electrical consumption for his mobile home and relied on a "moderate" smell of marijuana to establish probable cause. Smith concluded that, if the information in the officer's affidavit in *Crocker* was not sufficient to establish probable cause, then the affidavit in his case was insufficient.

The State pointed out that Young's affidavit showed that he was well-trained and experienced in smelling commercial amounts of growing marijuana. Young swore in his affidavit that smelling cultivating marijuana in the air outside a building is indicative of a commercial grow. The affidavit stated that, if an officer can smell cultivating marijuana

on the outside air, the amount being cultivated is likely in excess of four ounces because marijuana plants must be present in a sufficient number or mass for the odor to be detectable outside of a residence. Young's affidavit further explained that a personal-use grow does not typically involve a venting system, which is normally responsible for conducting the smell to the outside air. The State also pointed out that Young stated in his affidavit that, in all of his experience, he has never smelled packaged or personal-use marijuana stored in someone's house, and that one marijuana plant grown indoors in Alaska yields approximately two to three ounces on average.

The State further pointed out that Young's affidavit included an analysis of statistical information from his unit that showed that, when an officer smells the odor of cultivating marijuana outside a building, ninety-six percent of the time it is a felony commercial grow operation. Judge Brown rejected the State's arguments and granted Smith's motion "for the reasons stated by Defendant in his memorandum and reply in support of his motion to suppress."

*Discussion*

■■■ This court reviews a magistrate's determination of sufficiency of the allegations of facts in a search warrant application for an abuse of discretion.[3] Only the information brought to the magistrate's attention may be considered by this court,[4] and it must be considered in a reasonable and common-sense manner.[5]

"Probable cause to issue a search warrant exists when 'reliable information is set forth in sufficient detail to warrant a reasonably prudent [person] in believing that a crime has been or was being committed.'"[6] In *Noy v. State*,[7] this court relied on *Ravin v. State*[8] and held that adults may possess, in their

---

1. AS 11.71.040(a)(2); AS 11.71.040(a)(3)(F); AS 11.71.040(a)(3)(G); and AS 11.71.040(a)(5).

2. 97 P.3d 93 (Alaska App.2004).

3. *State v. Bianchi*, 761 P.2d 127, 130 (Alaska App.1988).

4. *State v. Jones*, 706 P.2d 317, 326 (Alaska 1985).

5. *State v. Chapman*, 783 P.2d 771, 772 (Alaska App.1989).

6. *Van Buren v. State*, 823 P.2d 1258, 1261 (Alaska App.1992) (quoting *Harrelson v. State*, 516 P.2d 390, 396 (Alaska 1973)).

7. 83 P.3d 538 (Alaska App.2003), *on rehearing*, 83 P.3d 545 (Alaska App.2003).

8. 537 P.2d 494 (Alaska 1975).

home and for personal use, less than four ounces of marijuana. In *State v. Crocker*,[9] this court held "that a judicial officer should not issue a warrant to search a person's home for evidence of marijuana possession unless the State's warrant application establishes probable cause to believe that the person's possession of marijuana exceeds the scope of the possession that is constitutionally protected under *Ravin*." [10]

The State argues that Young's affidavit established probable cause to believe that Smith's mobile home contained more than four ounces of marijuana, and that Smith was growing marijuana for commercial use. The State points to specific sections in Young's affidavit which asserted that: eighty-one of the marijuana grows seized by Young's unit from 2000 to 2004 were discovered by officers smelling growing marijuana, and in ninety-six percent of those seizures, a felony level grow operation was discovered; a budding marijuana plant produces the strongest odor and, usually, the larger the buds, the stronger the smell; the ability to smell the odor of cultivating marijuana outside a building is, by itself, indicative of a commercial grow operation because it typically indicates the use of an installed air venting system; and Young's unit rarely found personal use grow operations.

Smith argues that *Crocker* stands for the proposition that "the assertion of an odor of marijuana without more evidence indicating criminality cannot provide sufficient probable cause to uphold issuance of the search warrant," and that the allegations of illegality in this case fall below those allegations held to be insufficient in *Crocker*. In addition, Smith now argues that the statistics in Young's affidavit are unreliable because the data consists only of those instances in which the police ultimately *seized* the marijuana they smelled. Smith points out that the affidavit does not specify whether and how many times Young's unit smelled cultivating marijuana but did *not* seize it because the grows were not commercial grows.

In *Crocker*, this court ruled that the search warrant application in that case demonstrated probable cause that marijuana was being grown in the defendant's home, but the application did not provide any information that the defendant was cultivating more than four ounces.[11] Although the application asserted that the smell of growing marijuana was "strong," this court noted that the application contained no assertion that the strength of the smell gave the officers any indication of the amount of marijuana that might be growing inside, or that a correlation could be drawn between the strength of the odor of growing marijuana and the amount of marijuana being grown.[12] Without more information than a strong smell, this court held that there was nothing to indicate that the defendant's possession of marijuana violated *Ravin* and *Noy*.[13]

■ The central question here is whether the affidavit in support of the search warrant application shows a fair probability that Smith's mobile home contained evidence that Smith was conducting a commercial marijuana growing operation.[14]

Young's affidavit provided information that linked his ability to smell marijuana from the driveway of Smith's property to a probability that the mobile home contained evidence of a commercial grow of marijuana. As the affidavit stated, Young was able to smell the odor associated with growing marijuana outside Smith's mobile home. Young's experience, corroborated by the statistical analysis of previous cases with his unit, was that, in all likelihood, there was a commercial quantity of marijuana inside Smith's mobile home because of the obvious odor outside. This information remedied the deficiency found in *Crocker*. Thus, we conclude that Young's affidavit established probable cause to believe that evidence of commercial marijuana cultivation would be found in Smith's trailer. Accordingly, we reverse the superior court's order granting the motion to suppress and dismissing the indictment.

9. 97 P.3d 93 (Alaska App.2004).

10. *Id.* at 94 (citing *Ravin v. State*, 537 P.2d at 494).

11. *Id.* at 97–98.

12. *Id.* at 97.

13. *Id.*

14. *Id.* at 98.

We now address Smith's argument regarding the potential flaw in the statistical analysis included in Young's affidavit. Smith argues that additional information could undermine the persuasive force of the assertions in Young's affidavit. But this issue was not litigated in the superior court. Perhaps there is additional information about Young's unit's discovery of marijuana grows that would undercut probable cause. This possibility presents a situation similar to that addressed by our supreme court in *State v. Malkin*.[15] If Young's summary of the statistical information about his unit's experience with marijuana grows contained material misstatements of fact or material omissions of fact, *Malkin* provides the framework for evaluating that claim.[16]

> [O]nce a misstatement or omission is established, the burden of proving that it was neither reckless nor intentional shifts to the state. A failure to meet this burden will vitiate the warrant if the misstatement or omission is material, that is, if deletion of the misstated information from or inclusion of the omitted information in the original affidavit would have precluded a finding of probable cause. A non-material omission or misstatement—one on which probable cause does not hinge—requires suppression only when the court finds "a deliberate attempt to mislead [the magistrate]." [17]

However, Smith has not litigated this issue because the superior court granted his motion without considering these potential issues. Accordingly, Smith will be entitled to litigate these claims when the case returns to the superior court for further proceedings on the indictment.

*Conclusion*

The order of the superior court granting the motion to suppress and dismiss the indictment is REVERSED.

---

**15.** 722 P.2d 943 (Alaska 1986).

**16.** *Id.* at 946.

**17.** *Lewis v. State*, 862 P.2d 181, 186 (Alaska App.1993) (quoting *Malkin*, 722 P.2d at 946 n. 6) (footnotes omitted).