James A. GARHART, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9081.

Court of Appeals of Alaska.

Nov. 17, 2006.

Verne E. Rupright, Wasilla, for the Appellant.

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

A jury convicted James A. Garhart of five counts of fourth-degree controlled substance misconduct based mainly on the results of search warrants issued for his house and vehicle. During the execution of these warrants, the police found physical evidence tending to prove that he was engaged in the commercial cultivation of marijuana.

(In particular, the police found 62 marijuana plants in various stages of growth; these plants yielded over 4½ pounds of marijuana. In addition, Garhart had four motorized track-lighting systems, timers, fans, scales, and packaging materials.)

Following the jury's verdicts, and while Garhart was awaiting sentencing, this Court issued its decision in *State v. Crocker*, 97 P.3d 93 (Alaska App.2004). In *Crocker*, we held that a magistrate should not issue a warrant to search someone's home for evidence of marijuana possession unless the search warrant application establishes probable cause to believe that the marijuana possession falls outside the scope of protected personal use recognized by the Alaska Supreme Court in *Ravin v. State*, 537 P.2d 494 (Alaska 1975)—*e.g.*, the marijuana is being cultivated for sale, or the amount of marijuana exceeds the amount allowed for personal use. *Crocker*, 97 P.3d at 97–98.

Based on this Court's decision in *Crocker*, Garhart filed a motion for "New Trial and Arrest of Judgment". Garhart argued that, because of *Crocker*, the superior court needed to re-assess the validity of the three search warrants in his case. In particular, Garhart argued that the first search warrant issued for his home did not establish probable cause to believe that his marijuana possession exceeded the scope of protected possession established by *Ravin*.

The superior court denied Garhart's motion because the court concluded that the search warrant did, in fact, establish probable cause for the search, even under the rule announced in *Crocker*.

Garhart now appeals the superior court's ruling. We conclude that it makes no difference whether the search warrant applications in Garhart's case were sufficient under *Crocker*. Based on the Alaska Supreme Court's decision and reasoning in *State v. Glass*, 596 P.2d 10 (Alaska 1979), we conclude that our decision in *Crocker* should not be applied retroactively—that is, it should not be applied when assessing the validity of search warrants issued before we decided *Crocker*.

*Why we conclude that Crocker should not be applied retroactively*

■ Our decision in *Crocker* established a new rule of constitutional law.

We acknowledge that the *Crocker* decision is based on our supreme court's decision in *Ravin*, 537 P.2d 494, and on this Court's own decision in *Noy v. State*, 83 P.3d 538 (Alaska App.2003), and on rehearing, 83 P.3d 545 (Alaska App.2003). But for purposes of evaluating the potential retroactivity of a court decision, a court decision can be "new" even though it may follow logically from prior decisions—or even though it can reasonably be described as "governed" by prior decisions.

■ As Justice O'Connor wrote in her concurring opinion in *Wright v. West*, "To determine what counts as a new rule, ... courts [must] ask whether the rule ... can be meaningfully distinguished from [the rules] established by *binding precedent* at the time [the defendant's] state court conviction became final." (Emphasis added) [1]

Even though a newly-announced rule may be described as "controlled" or "governed" by prior judicial decisions, this does not necessarily decide the issue of whether the rule is "new" for purposes of the rules governing retroactivity. As the United States Supreme Court explained in *Butler v. McKellar*,

> [T]he fact that a court says that its decision is within the "logical compass" of an earlier decision, or indeed that it is "controlled" by a prior decision, is not conclusive for purposes of deciding whether the current decision is a "new rule" [for the test governing retroactivity]. Courts frequently view their decisions as being "controlled" or "governed" by prior opinions even when [they are] aware of reasonable contrary conclusions reached by other courts. [If] the outcome [was] susceptible [of] debate among reasonable minds ..., [the rule should be viewed as] a "new rule."

494 U.S. 407, 415, 110 S.Ct. 1212, 1217–18, 108 L.Ed.2d 347 (1990).

This Court's decision in *Crocker* was clearly susceptible of reasonable debate. Chief Judge Coats dissented in *Crocker*, arguing that this Court was overturning years of established precedent regarding search warrant applications.[2] This fact essentially decides the question of whether *Crocker* announced a new rule. To paraphrase what the Supreme Court said on this subject in *Beard v. Banks*, "reasonable jurists could

have concluded that the [Alaska Supreme Court's decision in *Ravin* and this Court's decision in *Noy* ] did not compel [the decision in *Crocker* ]".[3] Accordingly, *Crocker* announced a "new" rule for purposes of retroactivity analysis.

Because *Crocker* announced a new rule, we must decide whether that new rule is entitled to retroactive application.

In *Griffith v. Kentucky*,[4] the United States Supreme Court held that new rules of federal constitutional law must be applied to all defendants whose convictions are not yet final when the new rule is announced. But *Crocker* announced a rule of state constitutional law, and the state rules for retroactivity are different—particularly when the new rule deals with the legality of searches and seizures, and the potential exclusion of evidence.

The Alaska Supreme Court confronted an analogous case in *State v. Glass*, 583 P.2d 872 (Alaska 1978), *on rehearing*, 596 P.2d 10 (Alaska 1979).

In its first *Glass* decision, the Alaska Supreme Court held that the Alaska Constitution restricts police monitoring of private conversations to a greater extent than the federal Constitution does. In particular, the supreme court held that even when one participant in the conversation knows of and consents to the police monitoring, the police still need to obtain a warrant to engage in the monitoring [5]—even though, under federal law, the acquiescence of one participant is sufficient to authorize the police to engage in warrantless monitoring.[6]

In its second *Glass* decision, the supreme court confronted the issue of whether the *Glass* rule should be applied retroactively— *i.e.*, whether defendants should be entitled to suppression of evidence which was obtained by police monitoring that was legal when it

---

1. *Wright v. West*, 505 U.S. 277, 304, 112 S.Ct. 2482, 2497, 120 L.Ed.2d 225 (1992) (O'Connor, J., concurring).

2. *Crocker*, 97 P.3d at 99 (Coats, C.J., dissenting), citing *Lustig v. State*, 36 P.3d 731, 732–33 (Alaska App.2001); *Wallace v. State*, 933 P.2d 1157, 1163 (Alaska App.1997); *McClelland v. State*, 928 P.2d 1224, 1226–27 (Alaska App.1996); *Landers v. State*, 809 P.2d 424, 424–25, 426–27 (Alaska App.1991).

3. *Beard v. Banks*, 542 U.S. 406, 416, 124 S.Ct. 2504, 2513, 159 L.Ed.2d 494 (2004).

4. 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987).

5. *Glass*, 583 P.2d at 879, 881.

6. *See United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971).

occurred, but that violated the rule announced in *Glass*. The supreme court held that, with the exception of Glass himself and the defendants in three other accompanying cases, the *Glass* rule would be applied prospectively only. That is, the supreme court held that only police monitoring that occurred after September 15, 1978 (the date of the first *Glass* decision) would be governed by the warrant requirement announced in *Glass*. *Glass* (II), 596 P.2d at 11–12, 15.

In reaching this conclusion, the supreme court applied the three-prong Alaska test for retroactivity adopted in *Judd v. State*, 482 P.2d 273, 277–78 (Alaska 1971), and most recently summarized in *State v. Semancik:*

> We consider three factors when deciding whether to apply a new rule retroactively or prospectively: (1) the purpose to be served by the new rule; (2) the extent of reliance on the old rule; and (3) the effect on the administration of justice of a retroactive application of the new rule.

*Semancik*, 99 P.3d 538, 543 (Alaska 2004).

Regarding the first prong—the purpose of the new rule—the supreme court noted that evidence suppressed under the *Glass* rule is not suppressed because it is unreliable, but rather to advance the policies of the exclusionary rule: to deter police misconduct, and to maintain judicial integrity. But "[the] deterrence function [of the exclusionary rule] cannot be served by applying *Glass* to police conduct occurring before the date of the decision", nor is "judicial integrity ... undermined when the police conformed their actions to what was the law when they acted." [7]

This circumstance, the supreme court declared, "points quite decisively away from retroactive application of *Glass* ".[8]

> A review of the decisions of the Supreme Court of the United States dealing with retroactivity questions indicates that the starting point in analysis is the purpose [of the new rule]. Where the purpose of the new rule is primarily related to the integri-

ty of the verdict, the application thereof has generally been extended to all cases.... On the other hand, where the purpose of a new constitutional standard is not to minimize arbitrary or unreliable fact findings, but to serve other ends, retroactive application has generally been denied.

*Glass* (II), 596 P.2d at 14.[9]

Turning to the second criterion for assessing retroactivity, the supreme court noted that the "reliance by law enforcement officials on pre-*Glass* law was reasonable. Law enforcement officials could not be expected to foresee our ruling in *Glass*, and thus [their] decisions not to seek warrants for participant monitoring were entirely reasonable and in good faith." [10]

And turning to the third criterion for assessing retroactivity, the supreme court noted that if the *Glass* rule "were given complete retroactivity[,] so that it would apply to cases already completed, the negative effect on the administration of justice would be substantial.... Every case in which [a] conviction may have resulted from tape recorded evidence would have to be reopened and examined. In many cases, evidence will have been lost, memories faded and witnesses unavailable." [11]

Based on these considerations, the supreme court ruled that the *Glass* warrant requirement would only "apply prospectively to activity occurring on or after September 15, 1978".[12]

The supreme court's analysis in *Glass* (II) applies equally to the question of whether our decision in *Crocker* should be applied retroactively.

Regarding the first prong of the retroactivity analysis, the *Crocker* decision does not exclude evidence because it is unreliable or because the introduction of that evidence at a criminal trial may lead to verdicts of questionable validity. Rather, *Crocker* is aimed

---

7. *Glass* (II), 596 P.2d at 14.

8. *Glass* (II), 596 P.2d at 13.

9. Quoting *Rutherford v. State*, 486 P.2d 946, 952–53 (Alaska 1971).

10. *Glass* (II), 596 P.2d at 14.

11. *Id.* at 14–15.

12. *Id.* at 15.

at protecting the privacy of the home in a particular circumstance.

Regarding the second prong of the retroactivity analysis, both police officers (when applying for search warrants) and judicial officers (when issuing search warrants) reasonably relied on pre-*Crocker* law when they assessed whether there was probable cause to justify the search of a person's home based on evidence of marijuana possession. The decisions made by judicial officers to issue such warrants were reasonable at the time, and their actions were taken in good faith.

And regarding the third prong of the retroactivity analysis, according full retroactivity to *Crocker* would have a substantial negative effect on the administration of justice. Many cases would have to be re-opened and, because of the "fruit of the poisonous tree" doctrine of exclusion, it appears to us that most of these cases could not be reprosecuted.

Just as the supreme court concluded that the *Glass* warrant requirement should not be applied retroactively, we conclude that the restriction on search warrants announced in *Crocker* should not be applied retroactively.

Our decision in *Crocker* was issued on August 27, 2004. The search warrants in Garhart's case were issued in early March 2002—that is, approximately two and a half years before *Crocker*. Accordingly, even if those search warrant applications did not satisfy the test announced in *Crocker*, Garhart is not entitled to relief.

*Garhart's challenges to the marijuana laws*

■ Garhart raises a number of other constitutional claims on appeal. He asserts that Alaska's laws governing the possession and distribution of marijuana (as interpreted by the decisions of the Alaska Supreme Court and this Court) violate his rights to due process, equal protection, and privacy.

Garhart's arguments are rambling and difficult to follow, and he does not fully explain why he believes that the challenged laws violate these constitutional guarantees. Garhart's fundamental position appears to be that, because the *Ravin* decision recognizes a privacy right to possess limited amounts of marijuana in one's home for personal use, and because the *Ravin* decision did not establish an express limit on the amount of marijuana that one might lawfully possess in one's home, the legislature is prohibited from penalizing the possession of *any* amount of marijuana in one's home, and the legislature is further prohibited from penalizing the distribution of marijuana when the purchaser intends to take the marijuana home, absent affirmative proof that the marijuana will be used for commercial purposes.

For example, Garhart asserts that AS 11.71.040(a)(3)(F) (which prohibits the possession of one pound or more of marijuana) and AS 11.71.040(a)(3)(G) (which prohibits the possession of 25 or more marijuana plants) are both unconstitutional when applied to marijuana possession in one's home because neither statute requires proof that the possessor of the marijuana intends to manufacture or deliver marijuana for commercial purposes.

Garhart's argument is contrary to this Court's decision in *Walker v. State*, 991 P.2d 799 (Alaska App.1999), where we held that the legislature could properly prohibit the personal possession of eight ounces or more of marijuana in one's home, even if the marijuana was intended only for personal use. *Id.* at 803.

In *Walker*, we noted that the *Ravin* decision did not rest on the notion that people have a fundamental right to ingest marijuana or possess marijuana for personal use. Rather, the *Ravin* decision rested on a person's heightened right of privacy with respect to their conduct within their own home. *Id.* at 801–02, quoting *Ravin*, 537 P.2d at 504. We accordingly concluded that, even when marijuana is possessed for purely personal use, "the legislature nevertheless has the power to set reasonable limits on the amount of marijuana that people can possess for personal use in their homes". *Walker*, 991 P.2d at 802.

Garhart's argument essentially calls upon us to overrule our decision in *Walker*. Because Garhart asks us to overturn the law established in *Walker*, it is Garhart's burden

to convincingly demonstrate that the *Walker* decision either (1) was originally erroneous or (2) is no longer sound because of changed conditions.[13]

But Garhart's opening brief does not even mention the *Walker* decision. Nor does Garhart mention *Walker* in his reply brief—even though the State's brief explicitly relies on *Walker* when answering Garhart's argument.

One can not defeat the principle of *stare decisis* by studiously avoiding any mention of inconvenient precedent. We accordingly reject Garhart's constitutional attack on AS 11.71.040(a)(3)(F)-(G).

Garhart also argues that if, under Alaska's constitutional right of privacy, people are entitled to possess a limited amount of marijuana in their homes for personal use, then the constitution must also protect the cooperative growing and distribution of marijuana if the marijuana is intended solely for the personal use of the people involved in the growing and distribution activities. But, as we pointed out above, the *Ravin* decision is not based on a purported right to ingest or possess marijuana. Rather, it is based on people's heightened expectation of privacy in their homes. The *Ravin* decision clearly states that there is no constitutional right to buy or sell marijuana: "[N]either the federal or Alaska constitution affords protection for the buying or selling of marijuana...." *Ravin,* 537 P.2d at 511.

Garhart also argues that the courts and the legislature can not lawfully authorize disparate treatment of different aspects of the right of privacy. Thus, Garhart contends, the government can place no greater limits on the right to possess marijuana than it can place on other privacy rights such as the right to use contraceptives or the right to obtain an abortion.

This argument is frivolous. The *Ravin* opinion explains that when a statute or other state action is challenged as violating an individual's right to privacy, a court must first determine the nature of the privacy rights, if

any, that are infringed by the state's action. Then, if identifiable privacy rights are infringed, the court must resolve the question of whether the infringement is justified. This question is answered by determining (1) whether there is a valid governmental interest in imposing the challenged restriction, and (2) whether the means chosen by the government to advance its interest bear a sufficiently close and substantial relationship to that interest, given the nature of the privacy right infringed. *Ravin,* 537 P.2d at 498, 504.

In other words, our supreme court has held that when a court assesses a claimed right of privacy, the result will depend on what particular activity is at stake. The court must weigh the person's privacy interest in pursuing that particular activity against the government's competing interest in regulating or forbidding that activity.

To the extent that Garhart may be attempting to raise other claims in his brief, we conclude that any such claims are waived because of inadequate briefing.[14]

*The superior court's denial of Garhart's requests for special interrogatories and special production, and for pre-trial depositions*

Garhart filed several discovery requests in the superior court, including a motion to compel the State to answer special interrogatories and produce documents under Alaska Criminal Rule 16, as well as a motion under Alaska Criminal Rule 15 to conduct pre-trial depositions.

In these motions, Garhart sought information regarding the investigative techniques and the personnel used by the Matanuska–Susitna Narcotics Unit. Garhart's expressed intention was to prove that the officers of this unit, when applying for search warrants, presented false assertions that they personally could detect the odor of marijuana emanating from a particular structure—when, in fact, the true source of the information about

13. *State v. Semancik,* 99 P.3d 538, 540 (Alaska 2004).

14. *See Katmailand, Inc. v. Lake and Peninsula Borough,* 904 P.2d 397, 402 n. 7 (Alaska 1995);

*Petersen v. Mutual Life Ins. Co. of New York,* 803 P.2d 406, 410 (Alaska 1990); *Wren v. State,* 577 P.2d 235, 237 n. 2 (Alaska 1978).

the marijuana was an undisclosed informant or a prior unlawful search of the premises.

Garhart sought to depose two individuals who lived near Garhart's residence. According to Garhart's motion, these two individuals allegedly told a third party that they had been secretly involved in the investigation of Garhart's case. Based on this third party's report, Garhart claimed that the officers who procured the search warrant in his case relied on these two undisclosed informants for information about Garhart's illegal activities, but then failed to disclose the existence of these informants to the court or to Garhart's defense attorney.

■ Superior Court Judge Eric Smith denied Garhart's motion to compel the State to answer special interrogatories and to specially produce other evidence because the judge concluded that the Alaska Criminal Rules did not authorize these procedures. On appeal, Garhart argues that Judge Smith should have granted his requests, but he does not address the substance of the judge's ruling (*i.e.*, the judge's conclusion that Garhart was asking for something that the Criminal Rules do not authorize). Because Garhart does not address Judge Smith's legal basis for denying this special discovery, Garhart has waived his challenge to the judge's ruling.[15]

■ With regard to Garhart's motion for pre-trial depositions, Judge Smith allowed Garhart to submit *ex parte* the affidavit of the person who allegedly interviewed the two undisclosed police informants, and the judge deferred his ruling on the matter of depositions until he reviewed this affidavit.

Alaska Criminal Rule 15 authorizes pre-trial depositions in criminal cases for only two purposes: (1) to preserve a witness's testimony if the witness will not be available to testify at trial, and (2) "[in] exceptional circumstances, ... to prevent a failure of justice". Judge Smith apparently believed that, depending on the content of the affidavit, Garhart's request for depositions might potentially fall under subsection (2).

But after reviewing the affidavit, Judge Smith found no basis for allowing the affida-

vit to be presented *ex parte*, and he notified Garhart that he intended to release the affidavit to the State unless Garhart filed an opposition. Garhart filed no opposition, so Judge Smith made the affidavit public. The judge also denied Garhart's motion for pre-trial depositions, concluding that the affidavit submitted by Garhart failed to establish reason to believe that the police were using undisclosed or unlawful investigative techniques.

We have examined the affidavit, and we agree with Judge Smith's conclusion. The information in this affidavit does not establish a reasonable possibility that the police were using undisclosed informants or that they had engaged in illegal investigative tactics. Accordingly, we conclude that Judge Smith did not abuse his discretion when he denied Garhart's request for pre-trial depositions.

*Garhart's argument that the State should have been required to elect a single count among the five counts of the indictment before the case was submitted to the jury*

■ In five separate counts, Garhart was accused of violating four provisions of AS 11.71.040(a) relating to marijuana: subsection (a)(2) (manufacturing or possessing one ounce or more with intent to deliver); subsection (a)(3)(F) (possessing one pound or more); subsection (a)(3)(G) (possessing 25 or more plants); and two counts under subsection (a)(5) (knowingly maintaining a building and knowingly maintaining a vehicle that were used for the felony keeping or distribution of marijuana).

Garhart went to trial on all five counts. However, just prior to the parties' closing arguments, Garhart asked Judge Smith to order the State to elect one count among the five, and to preclude the jury from considering the four others. In his motion, Garhart argued that allowing presentation of all five counts to the jury would violate the constitutional prohibition on double jeopardy.

Judge Smith correctly denied this motion. Even when the counts of the defendant's indictment charge separate theories of the

15. *See Zok v. State,* 903 P.2d 574, 576 n. 2 (Alaska 1995).

same crime, or when the counts of the indictment charge separate crimes that will ultimately be treated as the "same crime" under the rule announced in *Whitton v. State*,[16] Alaska law allows the government to seek a jury verdict on each count. The double jeopardy clause comes into operation later, when the sentencing court is asked to enter judgement on those verdicts. At that time, the court must merge one or more of the verdicts so that the defendant receives only the number of convictions and sentences allowed by the double jeopardy clause.

*See Gilbert v. State*, 598 P.2d 87, 91 (Alaska 1979); *Robinson v. State*, 487 P.2d 681, 682 (Alaska 1971); *Atkinson v. State*, 869 P.2d 486, 495 (Alaska App.1994).

This is what happened in Garhart's case. The jury found Garhart guilty of all five counts, but Judge Smith later ruled that, under Alaska double jeopardy law, he was obliged to merge the verdicts on Counts I, II, III, and IV. Thus, Judge Smith entered only two convictions against Garhart: one conviction on these four merged counts, and another conviction on Count V (maintaining a vehicle for the felony keeping or distribution of marijuana).

*Garhart's challenges to his sentence*

Garhart's offenses are class C felonies.[17] Garhart was a second felony offender, owing to his 1992 federal felony conviction for manufacturing marijuana. Garhart therefore faced a 2-year presumptive term on each of his two convictions.[18]

In support of his request for a lesser sentence, Garhart proposed three mitigating factors under AS 12.55.155(d): (d)(13)—that the facts surrounding this offense and his previous offense established that the harm he has caused is consistently minor and inconsistent with a substantial period of imprisonment; (d)(14)—that his offense involved small quantities of marijuana; and (d)(16)—that his offense involved a small amount of a marijuana for personal use in his home.

Judge Smith found that Garhart had failed to prove any of these three mitigators. Later, the judge sentenced Garhart to the 2-year presumptive term on each count, and he ordered these two sentences to run concurrently. Thus, Garhart's composite sentence is 2 years to serve.

■ Garhart argues that Judge Smith's ruling on the proposed mitigating factors was influenced by the fact that all five counts were submitted to, and decided by, the jury. But as we explained above, it was proper for Judge Smith to allow the jury to deliberate on all five counts. Moreover, even if all five counts had not been submitted to the jury, Judge Smith was nevertheless entitled to consider all of the evidence in the case when he made his rulings on Garhart's proposed mitigators, regardless of whether that evidence was a necessary component of the jury's verdicts.

*See Brakes v. State*, 796 P.2d 1368, 1370–73 (Alaska App.1990) (holding that, because a lower burden of proof applies at sentencing, a sentencing judge can consider facts adverse to the defendant even if the jury's verdict shows that the jurors found those same facts not to be proved).

Garhart also argues that Judge Smith rejected his proposed mitigators because the judge improperly employed a "presumption" that Garhart's marijuana growing and distribution activities were for commercial purposes. But Garhart cites no portion of the record or the transcript to support this assertion.

In fact, the record shows that when Judge Smith rejected Garhart's assertions of consistently minimal harm and purely personal use, the judge relied heavily on the evidence in Garhart's present case—especially, the amount of marijuana found in Garhart's possession. We note, as well, the facts of Garhart's previous federal conviction; in that prior case, more than 4 kilograms of marijuana (approximately 9 pounds) was seized from Garhart's house.

16. 479 P.2d 302 (Alaska 1970).

17. *See* AS 11.71.040(d).

18. *See* AS 12.55.125(e)(1) (pre-March 2005 version).

■ Garhart also argues that he should have received either a suspended imposition of sentence or, at least, a wholly suspended sentence of imprisonment in light of the "political" nature of his case. Garhart argues that "[his] only crime was a political belief held by almost forty percent of Alaskans": "that the government has no business criminalizing the use or cultivation of marijuana".

First, Judge Smith had no authority to sentence Garhart to less than the 2–year presumptive term. Garhart failed to prove any mitigating factors, and he did not ask Judge Smith to refer his case to the statewide three-judge sentencing panel under AS 12.55.165. Thus, the prescribed 2–year presumptive term was, in effect, the applicable minimum sentence. *See* the pre-March 2005 versions of AS 12.55.125(e), AS 12.55.125(g), and AS 12.55.155(a).

Second, Garhart was not convicted because of his political beliefs. He was convicted because the State proved that he broke the law. Garhart has the right to seek to have the marijuana laws changed or repealed, but he does not have the right to flout them.

*Conclusion*

The judgement of the superior court is AFFIRMED.