NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| ZACHARIAH M. PAUKAN,<br><br>　　　　　　　Appellant,<br><br>　　　v.<br><br>STATE OF ALASKA,<br><br>　　　　　　　Appellee. | Court of Appeals No. A-13680<br>Trial Court No. 4BE-18-00227 CR<br><br>O P I N I O N<br><br>No. 2759 — September 22, 2023 |

Appeal from the Superior Court, Fourth Judicial District, Bethel, William T. Montgomery, Judge.

Appearances: Jane B. Martinez, Law Office of Jane B. Martinez, LLC, Anchorage, under contract with the Office of Public Advocacy, for the Appellant. Michal Stryszak, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Terrell, Judges.

Judge WOLLENBERG.

Zachariah M. Paukan was arrested and charged in connection with an incident involving his partner, Beautrice Heckman, and Heckman's friend, Eileen Tyson. While in custody, Paukan placed a phone call to Heckman, during which he told her: "I'm going to go to trial. Tell Eileen [Tyson] not to testify. And you won't either."

Based on this conduct, Paukan was indicted on two counts of first-degree witness tampering under AS 11.56.540 — one count under subsection (a)(1) and one count under subsection (a)(2).[1] Neither count specified the identity of the witness with whom Paukan allegedly tampered.

As trial began, it became clear that the parties had different understandings of what crimes had been charged in the indictment. The prosecutor (who was not the same prosecutor who conducted the grand jury proceedings) believed that Paukan had been indicted for tampering with two distinct witnesses — Heckman and Tyson. Paukan's attorney contended that Paukan had been charged with a single act of witness tampering relating to his attempt to influence Heckman, and that the two separate counts reflected two different legal theories of guilt. Paukan's attorney argued that allowing the State to proceed on a count relating to Tyson would amount to a fatal variance from the indictment. The superior court rejected this argument. Following a jury trial, Paukan was convicted of both counts.

On appeal, Paukan renews his argument that allowing the State to proceed on a witness tampering count related to Tyson amounted to a fatal variance. We have reviewed the indictment and the grand jury proceedings, and for the reasons explained in this decision, we agree with Paukan that there was a fatal variance. We therefore reverse Paukan's conviction for witness tampering relating to Tyson.

---

[1]   AS 11.56.540(a)(1) (knowingly inducing or attempting to induce a witness to "testify falsely, offer misleading testimony, or unlawfully withhold testimony in an official proceeding"); AS 11.56.540(a)(2) (knowingly inducing or attempting to induce a witness to "be absent from a judicial proceeding to which the witness has been summoned"). Paukan was also charged with and convicted of one count of first-degree unlawful contact. *See* AS 11.56.750(a)(1)(A). That conviction is not at issue on appeal.

*Facts and proceedings*

In 2018, Zachariah Paukan and Beautrice Heckman were living together with their two children. On the morning of March 1, Paukan and Heckman began arguing. They had been up late at night drinking wine with their friend, Eileen Tyson. At some point, during the argument, Paukan allegedly hit Heckman, threatened to burn the house down, and started pouring gasoline around the house. In response, Tyson took the two children to another home. Paukan was arrested shortly thereafter and prosecuted in a separate case for third-degree assault.

Later that same day, two troopers interviewed Tyson. Tyson told the troopers that Paukan had hit Heckman and threatened to burn down the house. Another trooper, Alaska State Trooper Robert Casey, subsequently issued subpoenas to both Heckman and Tyson for them to testify at the upcoming grand jury proceeding in the assault case.

While in custody, Paukan called Heckman from the jail several times, despite being ordered by the court not to do so. During one of those calls, made on March 2 — the day after the incident — Paukan told Heckman, "I'm going to go to trial. Tell Eileen [Tyson] not to testify. And you won't either." Trooper Casey obtained and listened to Paukan's jail phone calls a few days later.

On March 7, Trooper Casey filed a complaint alleging that Paukan had committed three additional crimes: unlawful contact (for contacting Heckman); violating conditions of release (again, for contacting Heckman); and first-degree witness tampering. The complaint did not specify the subject of the witness tampering charge — although the trial prosecutor later clarified that he understood this initial charge to refer to Heckman.

Alaska's first-degree witness tampering statute, AS 11.56.540, sets out two separate theories of guilt. Subsection (a)(1) makes it a crime to knowingly induce or

– 3 – 2759

attempt to induce a witness to "testify falsely, offer misleading testimony, or unlawfully withhold testimony in an official proceeding."  Subsection (a)(2) makes it a crime to knowingly induce or attempt to induce a witness to "be absent from a judicial proceeding to which the witness has been summoned."  The March 7th complaint alleged that Paukan was guilty under subsection (a)(2).

The grand jury proceeding in the underlying case — *i.e.*, the case in which Paukan was charged with third-degree assault — took place on March 8.  Heckman did not appear in front of the grand jury.  Tyson appeared telephonically and testified about the events of March 1, but the testimony she provided was inconsistent with her original statements to the troopers.  She downplayed Paukan's behavior and stated that she did not remember much of what happened.

A second grand jury proceeding was held on March 15 seeking to indict Paukan for the additional charge of witness tampering.[2]  As we noted above, the initial complaint alleged a single count of witness tampering under subsection (a)(2) of Alaska's first-degree witness tampering statute.  But the indictment presented to the March 15th grand jury alleged two counts of first-degree witness tampering — the first under subsection (a)(1) (Count I) and the second under subsection (a)(2) (Count II).  The counts did not identify the witness (Heckman or Tyson) with whom Paukan allegedly tampered.

Here are the counts, as they were read to the grand jury by the prosecutor:

Count I — that in the Fourth Judicial District, State of Alaska, on or about March 2, 2018, at or near St. Mary's, Zachariah Paukan knowingly induced or attempted to induce a witness to testify falsely, offer misleading testimony, or unlawfully withhold testimony in an official proceeding, all

---

[2]   The unlawful contact and violating conditions of release charges were misdemeanors that did not require an indictment.

of which is a Class C felony offense, being contrary to and in violation of 11.56.540(a)(1), and against the peace and dignity of the State of Alaska.

Count II — that in the Fourth Judicial District, State of Alaska, on or about March 2, 2018, at or near St. Mary's, Zachariah Paukan knowingly induced or attempted to induce a witness to be absent from a judicial proceeding to which the witness had been summoned, all of which is a Class C felony offense, being contrary to and in violation of 11.56.540(a)(2), and against the peace and dignity of the State of Alaska.

The grand jury proceeding was short (approximately twenty minutes), and Trooper Casey was the only witness. Casey testified that on March 1, he investigated an alleged assault involving Paukan, Heckman, and Tyson.

As the prosecutor questioned Casey about the March 1 incident, the only witness to the alleged assault about whom the prosecutor inquired was Heckman (not Tyson). The prosecutor confirmed with Casey that Heckman was "a witness and possibly a victim" in the March 1st case. The prosecutor then asked Casey whether he had issued a subpoena for Heckman to appear at the first grand jury; in response, Casey testified that he had issued subpoenas to both Heckman *and* Tyson. The prosecutor also asked Casey whether there was a jail phone call in which Paukan asked Heckman not to testify; in response, Casey testified that there was a phone call in which Paukan told Heckman not to testify *and* told Heckman to tell Tyson not to testify.

These two instances are the only times Tyson was referenced in connection with the witness tampering charges, and both references were made by Casey without prompting from the prosecutor. In fact, the prosecutor himself only mentioned Tyson twice during the entire proceeding: first, at the beginning of the proceeding, when the prosecutor told the grand jury that it might "hear from or about" Tyson, Heckman, and

Casey; and second, near the beginning of Casey's testimony, when the prosecutor asked Casey if he had investigated a case involving Paukan, Heckman, and Tyson.

At the end of the proceeding, the prosecutor noted that it was possible that some of the grand jurors had also been present at the March 8th grand jury proceeding (*i.e.*, the grand jury proceeding stemming from the underlying incident), and the prosecutor instructed the grand jurors that they should not consider that proceeding "other than for the purpose of determining whether Ms. Heckman was subpoenaed to testify before the grand jury." Again, the prosecutor did not mention Tyson. We note that because Tyson did testify at the March 8th grand jury proceeding, the prosecutor's instruction necessarily implied that the March 15th grand jury was *not* supposed to consider Tyson's March 8th grand jury testimony in its deliberations.

Given these facts, there was strong reason to believe that the indictment reflected a single act of witness tampering with Heckman under two separate theories — one theory under AS 11.56.540(a)(1) and the other under AS 11.56.540(a)(2). Indeed, Paukan's conduct with respect to Heckman could have arguably fallen under either theory — *i.e.*, that he induced or attempted to induce Heckman to either unlawfully withhold testimony *or* be absent from the March 8th grand jury proceeding.

By the time this case came to trial, however, a new prosecutor had been assigned to the case, and he sought to present proof that Paukan had committed two separate acts of witness tampering: one for tampering with Heckman and one for tampering with Tyson. The prosecutor's theory with respect to Count II (charging a violation of AS 11.56.540(a)(2)) was generally consistent with the indictment: that Paukan had induced Heckman to be absent from the March 8th grand jury proceeding.

But the trial prosecutor's theory of guilt with respect to Count I (charging a violation of AS 11.56.540(a)(1)) bore little resemblance to what was presented to the grand jury. The prosecutor explained that the State's theory of guilt as to Count I was

that Paukan had induced *Tyson* to testify falsely or offer misleading testimony at the March 8th grand jury. To prove this allegation, the prosecutor sought to introduce evidence of Tyson's original statements to the troopers and her testimony at the March 8th grand jury, in order to show that Paukan had actually caused her to change her version of events. The prosecutor described this evidence as "an essential element of the State's proof."

Paukan's attorney objected, arguing that the State's attempt to convict Paukan of witness tampering relating to Tyson constituted a fatal variance from the indictment. Defense counsel noted that the grand jury proceeding focused on Heckman, not Tyson. Defense counsel pointed to the fact that the prosecutor implicitly instructed the March 15th grand jury that it could not consider Tyson's testimony at the March 8th grand jury proceeding in its deliberations — *i.e.*, that it could not consider the very evidence the trial prosecutor now claimed was an "essential element" of the State's case.

The superior court rejected defense counsel's argument and held that there was no fatal variance. The court framed the question as whether the evidence presented to the grand jury was sufficient to find probable cause to indict Paukan for witness tampering relating to Tyson, and whether Paukan received adequate notice of the charges. The court concluded that there was both sufficient evidence and adequate notice of a crime involving Tyson because Trooper Casey testified at the grand jury that Paukan had told Heckman to tell Tyson not to testify.

After the close of evidence, the court instructed the jury that Paukan had been charged with two counts of first-degree witness tampering — under subsection (a)(1), for tampering with Tyson, and under subsection (a)(2), for tampering with Heckman. In closing argument, the prosecutor argued that Paukan tampered with Tyson (Count I) by inducing or attempting to induce Tyson to withhold testimony or to testify falsely in an official proceeding. The prosecutor argued that Paukan tampered

with Heckman (Count II) by inducing or attempting to induce Heckman to be absent from a judicial proceeding.

The jury returned guilty verdicts on both counts.[3] Paukan now appeals.

*Why we conclude that there was a fatal variance requiring reversal of the conviction involving Tyson*

On appeal, Paukan renews his argument that there was a fatal variance between the charge presented to the grand jury on Count I and the charge presented at trial involving Tyson. We agree, and we therefore reverse Paukan's conviction for witness tampering relating to Tyson.

Under Alaska law, a defendant may not be convicted "based on evidence that is materially different from the evidence that supported the grand jury indictment."[4] A fatal variance occurs where there is a "departure in the proof from the indictment sufficiently great to be regarded as a constructive amendment" requiring automatic reversal.[5] "The doctrine of fatal variance protects a defendant's right to a grand jury finding on every essential element of the offense,"[6] and a fatal variance occurs if the

---

[3] The jury also found Paukan guilty of unlawful contact. The superior court granted a judgment of acquittal on the charge of violating conditions of release.

[4] *Taylor v. State*, 400 P.3d 130, 135 (Alaska App. 2017) (citing *Lindeman v. State*, 244 P.3d 1151, 1159 (Alaska App. 2011)).

[5] *Michael v. State*, 805 P.2d 371, 373 (Alaska 1991) (quoting 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 19.2(h), at 469-70 (1984)).

[6] *Riley v. State*, 515 P.3d 1259, 1264 (Alaska App. 2022) (citing *Rogers v. State*, 232 P.3d 1226, 1240 (Alaska App. 2010)).

defendant is convicted of a different crime from the crime charged by the grand jury in the indictment.[7]

But not every variation in proof between the grand jury and trial requires reversal. Rather, "reasonable variations are permissible so long as the evidence is not materially different and involves the same basic criminal act or transaction that was considered by the grand jury in issuing the indictment."[8]

The seminal case in Alaska on fatal variances is the Alaska Supreme Court's decision in *Michael v. State*.[9] Michael was indicted for first-degree assault for having caused serious physical injury to his infant daughter.[10] In a bench trial, the judge found Michael not guilty of first-degree assault (because the judge was not persuaded that Michael had personally caused his daughter's injuries or acted as an accomplice to his wife, who had caused the injuries).[11] Nevertheless, the judge found Michael guilty of the lesser offense of second-degree assault under the theory that Michael had a legal duty to protect his child from his wife and breached that duty.[12] The supreme court held that this verdict constituted a fatal variance from the indictment because the grand jury

---

[7] *See Michael*, 805 P.2d at 373; *Simpson v. State*, 705 P.2d 1328, 1331 (Alaska App. 1985) ("The state cannot indict on one incident and convict on another."); *see also Rogers*, 232 P.3d at 1241 (noting, for clarification, that a grand jury's findings may *include* the essential elements for which the defendant is convicted).

[8] *Riley*, 515 P.3d at 1264; *see also Rogers*, 232 P.3d at 1239 (rejecting the notion that "a trial jury has no authority to convict a defendant of a felony if the jury's verdict is premised on a view of the evidence — more specifically, a view of the defendant's conduct — that is different from the grand jury's").

[9] *Michael*, 805 P.2d 371.

[10] *Id.* at 372.

[11] *Id.*

[12] *Id.*

had never indicted Michael on the theory that he breached a duty of care toward his child.[13]

The supreme court reached this conclusion despite acknowledging that "[h]ad the grand jury chosen to do so, it certainly could have indicted [Michael] for second degree assault, for failing to protect his child," and recognizing that the prosecutor had told the grand jury that a person "in Michael's position could be guilty of assault for failing to protect his child."[14] In other words, it did not matter that the evidence was sufficient for the jury to indict on a duty of care theory, nor did it matter that the prosecutor had informed the grand jury that such a theory was legally viable. Rather, what mattered was "that the grand jury made no such charge in the indictment."[15]

Thus, the question we must ask in this case is whether the grand jury indicted Paukan on a count of witness tampering relating to Tyson.

As the Alaska Supreme Court has explained, "An indictment's language, read in conjunction with the grand jury record, determines the charge for which the defendant is indicted."[16] Here, the language of the indictment is ambiguous: the indictment fails to specify the witness or witnesses with whom Paukan allegedly tampered. Instead, each count asserts only that Paukan had tampered with "a witness."

---

[13] *Id.* at 374.

[14] *Id.*

[15] *Id.*; *see also id.* at 373 (concluding that, under Alaska law, a fatal variance is not limited to situations that "deprive[] the defendant of fair notice of the charges . . . or leave[] the defendant open to the risk of double jeopardy").

[16] *Bowers v. State*, 2 P.3d 1215, 1218 (Alaska 2000).

Moreover, it is a common practice in Alaska for prosecutors to charge multiple counts related to a single criminal act, with each count articulating a different theory of guilt.[17]

Because the indictment is ambiguous, we turn to the grand jury proceedings to see whether, given the manner in which the case was presented, the grand jury understood that Count I of the indictment applied to Tyson. There is no basis in the record to conclude it did. The prosecutor never instructed the grand jury that one count applied to Heckman and one applied to Tyson, and the prosecutor only asked questions relating to Heckman. The relevant testimony about Tyson was offered by Trooper Casey, and only in response to questions about Heckman.

Furthermore, the prosecutor expressly told the grand jurors that they should not consider the earlier, March 8th grand jury proceeding for any purpose other than "determining whether *Ms. Heckman* was subpoenaed to testify before the grand jury."[18] This statement necessarily implied that the grand jurors should not consider Tyson's presence or her testimony at the March 8th grand jury — testimony that was, according to the trial prosecutor, now an "essential element" of the State's case.[19]

---

[17]  *See Garhart v. State*, 147 P.3d 746, 752-53 (Alaska App. 2006) ("Even when the counts of the defendant's indictment charge separate theories of the same crime . . . Alaska law allows the government to seek a jury verdict on each count."); *see also, e.g.*, *Williams v. State*, 480 P.3d 95, 98, 100-01 (Alaska App. 2021) (defendant was indicted and found guilty of two counts of second-degree murder that were premised on different theories regarding the same victim; the counts were later merged); *Voyles v. State*, 2008 WL 4951416, at *2, *14 (Alaska App. Nov. 19, 2008) (unpublished) (defendant was indicted and found guilty of three counts of second-degree murder related to one victim but based on different theories; the counts were later merged).

[18]  Emphasis added.

[19]  The State's theory that Paukan had actually induced Tyson to testify falsely at the March 8th grand jury, contrary to her earlier statements to the troopers, also lacked any

(continued...)

Taken as a whole, the indictment and the grand jury proceedings support the conclusion that the grand jury indicted Paukan for a single act of witness tampering relating to Heckman under two different theories. Paukan's conviction for a count of witness tampering related to Tyson thus constituted a fatal variance from the indictment — *i.e.*, "a departure in the proof from the indictment sufficiently great to be regarded as a constructive amendment."[20] To the extent there is any lingering ambiguity in the indictment and grand jury proceedings when viewed together, that ambiguity must be resolved against the State, as the State is responsible for crafting the language of the indictment and presenting evidence to the grand jury.[21]

---

[19]  (...continued)
support in the record of the March 15th grand jury proceeding. This is because, at that proceeding, neither Tyson's testimony nor her prior inconsistent statements to the troopers were introduced.

[20]  *Michael*, 805 P.2d at 373 (quoting 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 19.2(h), at 469-70 (1984)).

[21]  *See United States v. Olmeda*, 461 F.3d 271, 283 (2d Cir. 2006) ("[A]s between the government and the defendant, the government, being the party that drafts indictments, should bear any burden resulting from imprecise language[.]" (citing *United States v. Inmon*, 568 F.2d 326, 332 (3d Cir. 1977))); *State v. Wright*, 775 S.E.2d 567, 568 (Ga. App. 2015) ("An indictment is to be strictly construed against the state when a demurrer has been filed against it." (internal quotations omitted)); *Bruce v. State*, 104 N.E.2d 129, 131 (Ind. 1952) ("Where an indictment or affidavit is uncertain or ambiguous, or where its language admits of more than one construction, all reasonable doubts are to be resolved in favor of the accused and it will be construed most strongly against the state."); *cf. Anthony v. State*, 329 P.3d 1027, 1032 (Alaska App. 2014) (stating that, in the context of an ambiguous plea agreement between the State and a defendant, "the court is required to construe the ambiguity against the State, because the State is the party with the greater bargaining power"); *see generally Michael*, 805 P.2d at 374 n.13 (emphasizing "the continuing importance of careful pleading under Alaska's criminal law").

We note that the variance in this case had significant implications for Paukan: if the indictment charged two counts involving Heckman (as Paukan's attorney believed and as the grand jury proceeding reflected), those counts would merge if Paukan were found guilty of both counts.[22] But if the counts related to two different witnesses (as the prosecutor was allowed to argue at trial), then those guilty verdicts would result in the separate convictions at issue here.

For these reasons, we reverse Paukan's conviction for witness tampering related to Tyson.

*Conclusion*

We REVERSE Paukan's conviction on Count I. In all other respects, we AFFIRM the judgment of the superior court.

---

[22] *See Douglas v. State*, 215 P.3d 357, 365 (Alaska App. 2009) ("Under Alaska law, the State is allowed to pursue an indictment which separately charges different theories of the same crime, or which charges separate crimes that clearly will be treated as the 'same crime' for sentencing purposes under *Whitton* [*v. State*, 479 P.2d 302, 312-13 (Alaska 1970)] if the defendant is convicted of each." (citing *Garhart*, 147 P.3d at 752-53)).